| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------x | Return Date: November 25, 2008<br>10:00 A.M. |
| In re:<br><br>AGRIPROCESSORS, INC.,<br><br>Debtor.<br>------------------------------------------------------------x | Chapter 11<br><br>Case No. 108-47472 (CEC) |

<div style="text-align:center">

**DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION
TO MOTION OF FIRST BANK BUSINESS CAPITAL, INC.
TO CHANGE OF VENUE OF CHAPTER 11 CASE
TO THE NORTHERN DISTRICT OF IOWA**

</div>

This Memorandum of Law is respectfully submitted on behalf of Agriprocessors, Inc. (the "Debtor") in opposition to the motion (the "Motion") of First Bank Business Capital, Inc. ("First Bank") to change venue of the Chapter 11 case to the Northern District of Iowa. For reasons set forth below, the Motion should be denied.

<div style="text-align:center">

**PRELIMINARY STATEMENT**

</div>

First Bank is using a proposed change of venue to exert hegemony over the bankruptcy case and force the Debtor to attempt to reorganize one thousand miles or more from its business decision-making apparatus and access to capital and financing. Thus, the proposed change in venue is more than a procedural motion and could cripple the ability for the Debtor (and now the Operating Trustee) to procure badly needed financing to the detriment of many other stakeholders in the bankruptcy case. Accordingly, the Court should evaluate First Bank's request to change venue with due regard that retention of the case in the Eastern District of New York enhances the

Debtor's ability to procure new investors, and, ultimately, to reorganize. Conversely, the proponents of a change of venue only have their specific interests at heart.

For purposes of bankruptcy, a corporation can file a Chapter 11 case in one of three different locations: (i) where the corporation is organized; (ii) where the corporation maintains its principal place of business; or (iii) where the corporation's primary assets are located. The Debtor venued the Chapter 11 case in the Eastern District of New York in deference to the fact that all major decisions are made here; its Board of Directors is located here, its potential investors and lenders have ties to New York, and the Debtor operates a major distribution center in Brooklyn with significant sales and a large local customer base.

We submit that these elements establish a principal place of business in Brooklyn under the governing "major business decisions test". Indeed, First Bank's motion is flawed because it fails to articulate, let alone address, the various tests for determining a corporation's principal place of business for purposes of bankruptcy law. That the Debtor maintains its operating facility in Iowa, or previously acknowledged Iowa to be its principal place of business for purposes of a diversity action, is not determinative. Rather, the Court is urged to make an independent assessment based upon evidence establishing that major decisions are made in the Eastern District of New York.

## STATEMENT OF FACTS

The supporting facts relevant to the Debtor's opposition to the Motion are more fully set forth in the accompanying Declaration of Bernard S. Feldman and will not be repeated herein to avoid unnecessary duplication. Instead, those facts will be referenced in the Debtor's legal argument below as applicable and appropriate.

## ARGUMENT

## FIRST BANK'S MOTION TO CHANGE VENUE SHOULD BE DENIED

A.  **The Eastern District of New York Constitutes the Debtor's Principal Place of Business Under the Major Business Decision Test.**

Venue of a bankruptcy proceeding is governed by 28 U.S.C. § 1408, which provides multiple locations for a Title 11 case based on either the Debtor's domicile, principal place of business or location of principal assets. Each of these predicates forms an independent basis for venue. See, e.g., In re Washington, Perito & Dubuc, 154 B.R. 853, 859 (Bankr S.D.N.Y. 1993) [Venue may properly lie in more than one district].

Procedurally, the Debtor's choice of venue is presumed to be proper Matter of Peachtree Lane Associates, Ltd., 150 F.3d 788, 792 (7th Cir. 1998), while First Bank, as the moving party, bears the burden of proof by a preponderance of the evidence to effectuate a change of venue. In re Manville Forest Prod. Corp., 896 F.2d 1384, 1390-91 (2d Cir. 1990). ["The party moving for a change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence"].

In knee-jerk fashion, First Bank argues that the Debtor's principal place of business is in Iowa because this is where the Debtor's operating plant is located. A proper venue analysis, however, is far more nuanced than First Bank's simplistic view. In bankruptcy, a corporation's principal place of business is determined by the so-called major business decisions test, which looks to where the Debtor controls its financial affairs, rather than the place of its day-to-day activities or physical location of assets. The Second Circuit has been a long standing proponent of the major business decision test dating back to 1953. In <u>Capitol Motor v. Counts Le Blanc Corp.</u>, 201 F.2d 356 (2d Cir 1953), the venue of a Chapter X reorganization case for Maryland and Louisiana based entities which conducted business outside of New York was nevertheless sustained in New York upon the rationale that the "troubles of the business were not manufacturing but financial, and the heart and also body of that was in New York." <u>Id.</u> at 359. The same rationale easily applies here, as the Debtor's problems are financial, and its "heart" and "soul" lies in New York as well.

<u>Capitol Motors</u>, <u>supra</u>, remains good law and was cited favorably by the Court in <u>Peachtree Lane Associates Ltd.</u>, 206 B.R. 913 (N.D. Ill 1997). The <u>Peachtree</u> decision provides strong historical support for the adoption of the major business decision test. Equally important, the <u>Peachtree</u> decision also makes clear that the Debtor can venue its Chapter 11 case in the Eastern District of New York, even though it acknowledged a place of business in Iowa for purposes of a prior diversity lawsuit based upon different policy rationales:

4

> "(Appellants) raise several statutory interpretations of arguments about the correct construction 'principal place of business,' almost all of which mischaracterize either the Bankruptcy Court's holdings or the law. For instance, they complain that the 'nerve center' test applied by the Bankruptcy Court is drawn from the case law on diversity jurisdiction, an improper source for bankruptcy principles because of the different policy considerations at work in the determination of a corporation's principal place of business for diversity purposes. See CORCO, 596 F.2d at 1246 n.17. <u>We agree that, as a general matter, tests for a corporation's principal place of business in diversity cases should not be imported wholesale into bankruptcy venue law</u>. This is not what the Bankruptcy Court did, however. Rather, the Bankruptcy Court applied the 'major business decisions' test, a recognized test for principal place of business in bankruptcy cases, but simply referred to that test on occasion as a 'nerve center' test." (emphasis supplied).

206 B.R. at 922. Accordingly, the Answer filed by the Debtor in the Creative Source Group suit does not constitute judicial estoppel. Indeed, irrespective of labels, the burden remains on First Bank to prove the Debtor's major decisions were made in Iowa, and not Brooklyn (something which it cannot do). <u>Id.</u> at 923.

Bankruptcy courts have consistently applied the major business decision test in a number of other reported cases involving a request to change venue. <u>See, e.g.</u>, <u>In Garden Manor Associates</u>, 99 B.R. 551, 553 (Bankr. S.D.N.Y. 1988) ["The principal place does not necessarily have to be the place where the sole asset is located, but is often where major business decisions are made"]; <u>In re Suzanne de Lyon Inc.</u>, 125 B.R. 863, 867 (Bankr. S.D.N.Y. 1991) ["It is necessary . . . to consider the character of the corporation, its purposes and its activities. Central to this determination is where the

5

debtor makes its major business decisions, for this constitutes the principal place of business of a debtor, notwithstanding the physical location of its assets or production"]. Accord: In re Eagle Point Limited Dividend Housing, 350 B.R. 84 (Bankr. N.D. Indiana) [". . . focus on the location of the entity's primary decisionmakers is particularly appropriate . . ."]; In LaGuardia Associates LP, 316 B.R. 832 (Bankr. E.D. Pa 204) [Adopting nerve center test over operational test]; In re Holiday Towers, 18 B.R. 183 (Bankr. S.D. Ohio 1982) [Nerve center test applied over "bulk of activity" test].

As emphasized in the accompanying Feldman Declaration, all important financial and strategic decisions are made in Brooklyn where the Debtor's sole shareholder and director Aaron Rubashkin resides and where the Debtor's CEO, Bernard Feldman, lives and maintains his offices. First Bank has offered nothing to negate the Debtor's proof that management decisions are made in New York. Accordingly, the Court should apply the major business decision test to retain venue in the Eastern District of New York.

### B. The Corco Factors Do Not Warrant a Change of Venue

Determining that the Debtor's principal place of business is in the Eastern District of New York does not end the inquiry, as 28 U.S.C. § 1412 permits the Court to transfer venue, "in the interest of justice or for the convenience of the parties." Although First Bank has not requested such relief directly, it is worthwhile to review the relevant factors which generally govern a transfer of a venue in bankruptcy.

Preliminarily, it should be re-emphasized that transferring a properly venued case is not to be taken lightly, and the Court should exercise its power to transfer

cautiously. In re Enron Corp., 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) ("Enron I"); In re Enron Corp., 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002; abrogated on other grounds 317 B.R. 629 (Bankr. S.D.N.Y. 2002) ("Enron II"). The Debtor's choice is entitled to great weight. In re Melgar Enterprises, Inc., 140 B.R. 43, 45 (Bankr. E.D.N.Y. 1992), In re Pavillion Place Associates, 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988) ["Transfer is a cumbersome disruption of Chapter 11 process"].

The criteria to be considered by the court in reviewing a motion to change venue was established by the Fifth Circuit in the seminal case, In re Commonwealth Oil Refining Co., 596 F.2d 1239, 1247 (5th Cir. 1979); cert. denied, 444 U.S. 1045, 100 S.Ct. 732 (1980). These factors are commonly known by the acronym "Corco" and include (i) proximity of creditors of every kind to the court; (ii) location of the Debtor's assets; (iii) proximity of the debtor to the court; (iv) proximity of witnesses necessary to the administration of the estate; and (v) the economic administration of the estate; and (iv) the necessity for ancillary administration of the estate in liquidation should result.

While First Bank acknowledges the overriding importance of efficiency of administration to a change of venue analysis, its assessment of the Debtor's reorganization prospects is badly misguided. To begin with, First Bank discounts any possibility of post-petition financing, even though the Debtor has been in communication with a number of groups and believes a lender will emerge shortly. Moreover, contrary to First Bank's analysis, there is sufficient equity in various assets to attract potential lenders, chiefly the Debtor's operating plant which is subject to a single mortgage of

7

approximately $9.6 million. The plant has a book value of approximately $40,000,000 without depreciation and is believed to retain substantial equity.

Likewise, the people most knowledgeable about the Debtor's finances, budgets, projections etc. are Messrs. Rubashkin, Feldman and Lipshie, all of whom reside and maintain offices in New York. The employees in Iowa are strictly production oriented and have no involvement in developing business strategy except, perhaps, to generate raw data, which is transmitted electronically. The key witness to any immediate proceedings before the Bankruptcy Court would be Mr. Feldman and the Operating Trustee, both of whom reside in and around the Eastern District of New York. Based upon these facts, economy of administration plainly favors retaining venue in Brooklyn.

The balance of the other factors also weigh against a change of venue. While five of the top twenty unsecured creditors are based in Iowa, the majority of secured and unsecured creditors are located throughout other parts of the nation, with many located in New York City vicinity. Thus, in the main, creditors would not be inconvenienced by retaining the case here since most will have to travel under any circumstances.

But appearances can be made by telephone and this is hardly a case where creditors are being substantially prejudiced by their distance from the original court. As several courts have commented,

> Where a transfer would merely shift the inconvenience from one party to the other or where after balancing all factors, the equities lean but slightly in favor of the movant, the plaintiff's choice of forum should not be disturbed.

In re Legend Industries, Inc., 49 B.R. 935, 938 (Bankr. E.D.N.Y.); In Enron II, 284 B.R. at 386-87; In re Great American Resources, Inc., 85 B.R. 444, 445-56 (Bankr. N.D.Oh. 1988).

The third and fourth criteria (the location of the debtor and key witnesses) also favor retaining the case in Brooklyn. The Debtor verily believes that a successful reorganization, even under the stewardship of an Operating Trustee, is dependent upon procuring new financing which can best be achieved if the Chapter 11 case remains in New York. The proximity of the Debtor's sole shareholder, as well as its CEO, to the Court, in juxtaposition to the Orthodox community, is more important than the mere fact that the largest physical plant is in Iowa.

Moreover, there is no reason to believe, as is suggested by First Bank, that this Court would be overburdened by the Chapter 11 proceedings. This Court routinely handles large business cases and is equipped to apply Iowa law to any parochial state law disputes which may arise.

First Bank also wrongly suggests that because this case was filed, in part, to stay the appointment of receiver that somehow impacts the decision on where the case should be venued. In fact, Section 543 clearly terminates the power of any pre-petition receiver, making considerations based on the prior motion moot.

The decision by the Late Hon. Conrad B. Duberstein denying a motion to change venue in In re Melgar Enterprises, Inc., supra, is worth emphasizing. In Melgar, the debtor's sole asset consisted of real property in Illinois. Nevertheless, Judge Duberstein elected to retain the case in New York on the strength that the principals of

the debtor were located on Long Island. Additionally, Judge Duberstein was greatly influenced by the fact the Debtor's reorganization depended on its ability to retain new capital.

Here, too, case, the decision makers including the prospective Operating Trustee are in New York, while the need for new financing is even more acute. Thus, as Judge Duberstein found so poetically in <u>Melgar Enterprises</u>, there is no reason why this case should be transferred to Dubuque solely to satisfy the claim of First Bank which may be satisfied within a short time in any event.

## CONCLUSION

For the reasons set forth herein, First Bank's motion to transfer venue should be denied in its entirety.

Dated: New York, New York
       November 18, 2008

                                    FINKEL GOLDSTEIN
                                     ROSENBLOOM & NASH, LLP
                                    26 Broadway, Suite 711
                                    New York, New York 10004
                                    (212) 344-2929

                            By:     _____
                                    Kevin J. Nash, Esq.
                                    A Member of the Firm

H:\sylvia\word\Agriprocessors, Inc\Memo of Law re Venue 11-18-08 - 2nd version.doc